DEDA DALBEY, Appellant, v. TOWN OF IRWIN, Appellee.

**NEW TRIAL:** Grounds—Over-Technical Rulings. The appellate court 1 will be reluctant to overrule an order for a new trial on the ground (true in fact) that the trial court was somewhat over-technical in his ruling, to the disadvantage of the defeated party.

**MUNICIPAL CORPORATIONS:** Streets and Alleys—Negligence— 2 Smooth Sidewalk. It is not negligent for a city to maintain, along a street having a fall of 2 feet in each 50 feet, a cement sidewalk with a surface troweled to a condition of great smoothness.

*Appeal from Shelby District Court.*—O. D. WHEELER, Judge.

DECEMBER 15, 1922.

ACTION to recover damages for personal injury received by plaintiff in a fall on a sidewalk in defendant town. The trial resulted in a verdict for plaintiff for $1,100. The court set aside the verdict and judgment which had been rendered thereon, and granted a new trial, from which order this appeal is taken.—*Affirmed.*

*Shelby Cullison,* for appellant.

*Edward S. White* and *T. H. Smith,* for appellee.

ARTHUR, J.—The court entered a written order, setting aside the verdict and judgment and granting a new trial, wherein he stated his reasons therefor. The order contains a fair statement of the case. It will be helpful to set forth the order, which is as follows:

"The sidewalk complained of lies on the west side of the main street of the town, in the middle of the business section. It was built some 15 years ago. It is composed of cement or concrete, and substantially conforms to the slope of the street, sloping from the north toward the south at a rate of about 2 feet in 50, or what is called a 4 per cent grade. A light snow had fallen on the night before the date in question, and the plaintiff, in passing over this walk, fell, and was severely injured. She brings this action against the town, alleging that the walk in question, when constructed, was finished by troweling the same to a smooth surface, instead of leaving same with a roughened surface. It is not claimed that it was brought to a glassy surface, but that a steel trowel was used, instead of a cork or wooden float, and that by such instrument the cement was worked to the surface, making the walk smooth. The walk would undoubtedly have been safe, and the accident would not have occurred, but for the skift of snow which had fallen upon it the night before."

There are three reasons for which the court concludes a new trial should be granted:

"1st.   The court sustained objections to certain questions and struck certain answers wherein the question of comparative smoothness was involved.   It was sought to be shown that the walk in question was no more smooth than cement walks generally.   Negligence is a matter of ordinary care,—that degree of care which men ordinarily exercise under the same or similar circumstances.   If this walk was finished in the manner in which men ordinarily finish walks of like character, it was material to show that fact.   The town had a right to finish its walks as such were ordinarily done. * * *

"2d.   The court, upon mature reflection, is not satisfied that the condition of the walk was the proximate cause of the accident.   The accident in all probability would not have happened, but for the presence of snow upon the walk.   Proximate cause is that but for which an accident would not have happened.   The presence of a small amount of snow upon the surface of the walk or upon the ground, even though rough, has been the means of many accidents for which no one was responsible.   The smooth character of the surface adds materially to the ease with which the feat is accomplished, but the real cause lies in the presence of the snow.

"3d.   As a matter of public policy, the court has grave question of the right of recovery in cases of this character.   Cement or concrete is a material in common use in the making of sidewalks,—perhaps no material more universally used for such purpose.   Miles of sidewalks have been constructed in the manner in which this walk was constructed, and finished as this was finished.   Of the two methods of finishing, it would be difficult to say which is the more common.   Accidents will happen upon these sidewalks when there is snow or ice on them, whether they be finished the one way or the other, and parties will be injured, as was the plaintiff in this case.   To leave the question of the degree of smoothness to which a particular walk shall be finished to a jury in each case is to leave the matter of sidewalk construction in a delightful state of uncertainty. One can conceive of a sidewalk constructed with a surface so rough as to furnish an uncertain footing when cov-

ered with snow; and on the other hand, one can conceive also
of a sidewalk with a surface so glassy as to be dangerous when
covered with snow. The most that can be said for the evidence
in this case was that the sidewalk was troweled with a steel
trowel, so as to bring the cement to the surface, and thus pre-
sent a smooth surface. Many miles of sidewalk are thus finished.
It is a common method of finishing them. There was nothing
in the slope of the street which required any particular finish,—
it was not steep. It conformed to the slope of the street upon
which it was laid. * * * This matter was possibly raised upon
motion for a directed verdict, but failed to impress the court
then as it now does.''

Errors relied upon for reversal are: ''(1) The court
erred in granting a new trial on the ground of improper ex-
clusion of testimony as to the condition of the sidewalk in con-
troversy, as compared with other walks. (2) The court erred
in granting a new trial on the ground that the defect in the walk
in controversy was not the proximate cause of plaintiff's injury.
(3) The court erred in granting a new trial on the ground that
the condition of the walk in controversy could not be a basis
for a charge of negligence.''

The trial court ruled, in granting a new trial, that he had
committed error in ruling on objections to the testimony; that
evidence was erroneously excluded which tended to show that
the walk in question was finished as was or-
dinary and usual. It was undoubtedly true that
evidence was admissible that the walk in con-
troversy was finished in the usual and ordinary manner adopted
generally for the finishing of concrete sidewalks. *Wilder v.
Great Western Cereal Co.*, 134 Iowa 451.

1. NEW TRIAL:
grounds: over-
technical rul-
ings.

But appellant contends that the evidence excluded by the
trial court does not fall within this rule. The record shows the
following, with reference to the testimony of the class which is
being considered: P. K. Paulsen was called by appellant, and
the following record was made:

''Q. Can you tell whether or not it is a smooth finish or
not? A. I do not know what you call a real smooth finish. It
is made like many other walks. That is all I can say.''

On motion of the examiner, the above answer was stricken as not responsive, to which defendant excepted.

"Q. Can't you say whether it is smooth or not? A. I don't know whether it is smoother than any other walks or not."

On motion of the examiner, the answer was stricken as not responsive, to which ruling defendant excepted. Answers to the following questions were allowed to stand:

"Q. Tell me if that is a smooth-finished walk or not. A. It is not finished as roughly as some of them are,—that is about all I can say. Q. Is that walk a smooth surface? A. Just medium. Q. Anyway, you will say it is not a rough-finish walk? A. Yes. Q. You saw it built? A. Yes, sir. I had it built, but I did not pay much attention to it,—really did not observe it when the surface was troweled."

Afterwards, Paulsen was called by defendant, and was permitted to state: "Q. Is it smooth at all? A. It is like any other walk."

The witness further testified:

"The walk isn't smooth, in my opinion. I think it was more smooth when it was first built than right now."

Peter Steenhussen was called by defendant, and the following record was made:

"Q. If there is any difference in the smoothness of that walk as compared with any of the other walks along there, I wish you would tell us."

Witness was not permitted to answer the question.

"Q. What is the character of the walk, or what was it in December, 1919, as to being rough or smooth? A. The walk was all right,—just as good as any other."

The answer was stricken, on motion of appellant.

C. C. Mellerop, called by defendant, was permitted to testify that the walk in controversy and other walks along the same street were alike. Mellerop was asked:

"What, if any, difference is there between that walk and the ordinary sidewalks you see in cities and towns?" The answer was excluded on objection, as incompetent and immaterial and calling for a comparison. "Q. You have observed these walks around the square here [Harlan]? A. Yes, sir. Q. Now, what, if any, difference is there between that finish up and

these?" Answer was excluded, on objection of appellant, as immaterial and calling for a comparison.

Witness T. J. Ryan, called by defendant, was permitted to testify that the finish of the walk in controversy was like the rest of the walks in the town of Irwin.

Witness J. Grote, called for defendant, testified that "the walk is the ordinary concrete walk;" and when asked, "How would you describe it as to roughness or smoothness of surface, in your own way, as accurately as you can?" answered, "Just as I would any ordinary concrete walk."

The issue to which the above mentioned testimony was directed was as to the finish of the surface of the walk; and we doubt if there was error in the exclusion of the testimony offered, in the form in which it was offered. The trial court, in his ruling on the motion for a new trial, above set forth, expresses the opinion that he "held rather too close" in ruling on the admission of the testimony offered. We discover no particular error in the rulings complained of, and the court, after excluding such testimony, admitted some testimony of the same character. However, we are inclined to accede to the view of the trial court that he "held too close." Under our rule, uniformly adhered to, that we will not interfere with an order of the trial court granting a new trial unless there appears a clear abuse of discretion, we are inclined not to disturb the order granting a new trial in the instant case because of such rulings on evidence.

Passing over the question discussed by counsel and adverted to by the trial court in his ruling hereinbefore quoted, as to whether the condition of the walk as to its surface was the proximate cause of the accident (because we think such question necessarily inheres in the discussion of the question we are about to take up), we go to what must be the controlling question in the case. Manifestly, the important thing involved in this case is the question of whether the maintenance of the walk in controversy was negligent. The evidence gave different descriptions of the walk. Plaintiff's witnesses described the walk as being "very smooth." One witness said it was "smooth like glass to walk on." From the evidence, the jury might have

2. MUNICIPAL CORPORATIONS: streets and alleys: negligence: smooth sidewalk.

found that the walk involved was finished with an extremely smooth surface. Now the question is, Was such condition negligent? As our conclusion as to the court's rulings on evidence, above expressed, upholds the court's order granting a new trial, the discussion as to whether the condition of the walk, as disclosed by the testimony, constituted negligence, may savor of dictum. However, as counsel for both parties, as we understand them, lay most stress on this question, and desire a holding thereon, we will discuss it.

Counsel for appellant insists and ably argues that the slope of the walk in controversy and the surface construction caused it to be unsafe under the weather conditions ordinarily to be anticipated in this state, and that such a situation may be said to be negligent. That is, it may be said to be negligent to construct and maintain a walk with such a smooth surface as to make it unsafe, in view of the climatic conditions which occur in this state. We are warranted in observing, we think, that the slope of the walk, only 2 feet in 50 feet, is almost negligible.

Plaintiff is here predicating liability on the ground that the finish of the walk made an unusual and actionable danger. Considering the surface of the walk to be as described by plaintiff's witnesses, we hold that, as a matter of law, the maintenance of the walk in question did not constitute negligence.

The conclusions above expressed result in not disturbing the order of the trial court granting a new trial, and the judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.